IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:10-CT-3078-D

JAMES ANTHONY MAY,            )
                              )
              Plaintiff,      )
                              )
      v.                      )        **ORDER**
                              )
STATE OF NORTH CAROLINA, et al., )
                              )
              Defendants.     )

James Anthony May ("May" or "plaintiff"), a state inmate proceeding pro se, filed this complaint pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights. Compl. [D.E. 1]. On May 10, 2011, the court reviewed the complaint pursuant to 28 U.S.C. § 1915A and allowed it to proceed in part [D.E. 7], and the clerk directed North Carolina Prisoner Legal Services, Inc. ("NCPLS") to investigate plaintiff's complaint [D.E. 8]. On June 1 and 3, 2011, the remaining defendants were served [D.E. 11–12]. On August 3, 2011, NCPLS responded to the order of investigation, stating that it had investigated plaintiff's complaint, "provided advice and assistance to the plaintiff," and determined that appointment of counsel was not warranted [D.E. 13]. On September 6, 2011, May filed a "motion for an/a temporary injunctive order" [D.E. 18], concerning the NCPLS's response to the order of investigation. On December 23, 2011, the remaining defendants filed a motion to dismiss the complaint for failure to state a claim [D.E. 28], along with a memorandum of law and supporting exhibits [D.E. 29]. Because defendants attached materials that are outside the scope of the pleadings, the court construes the motion as requesting summary judgment. See Fed. R. Civ. P. 12(d). Pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the court notified May about the motion, the consequences of failing to respond,

and the response deadline [D.E. 30]. On January 11, 2012, May filed an affidavit in opposition to the motion [D.E. 31], along with exhibits in support. As explained below, the court denies May's motion [D.E. 18], and grants defendants' motion for summary judgment [D.E. 28].

I.

While incarcerated at Pasquotank Correctional Institution ("Pasquotank"),[1] May alleges that he received a disciplinary conviction for stabbing a fellow inmate ("Fentress"), even though May was "in the dinner hall" when the assault occurred, a search of May by correctional officers revealed no blood stains or weapons, and a correctional officer who allegedly witnessed the assault did not identify May as the assailant. See Compl. 4–5. May asserts that the procedure by which he was convicted violated due process. Id. 5. Specifically, May asserts that after the assault, he was taken to lock-up without being interviewed or asked to give a statement; that he received less than twenty-four hours' notice of the disciplinary charge; that the Disciplinary Hearing Officer ("DHO"), Defendant Respass, denied May his right to request that the investigating officer gather witness statements and evidence on his behalf; that Respass did not consider one of Fentress's two statements at the administrative disciplinary hearing; that Respass found May guilty of the assault charge based on insufficient evidence and on a statement by defendant Moore-Haskins that was hearsay and false; and that Respass "allowed Defendant Moore-Haskins to implicate plaintiff in her statement without a written sign[ed] statement by plaintiff." Id. 5–6.

The parties have submitted the administrative record of May's disciplinary conviction, which shows the following. On September 22, 2009, Fentress was stabbed on the lower tier of Unit 4, the

---

[1] May is now incarcerated at Scotland Correctional Institution. See N.C. Dep't of Corr., Offender Pub. Info., http://webapps6.doc.state.nc.us/opi/viewoffender.do?method=view&offenderID=0644299 (last visited July 12, 2012).

Pasquotank dormitory in which he and May were housed. [D.E. 29-1] 54–55; [D.E. 31-1] 8. May was assigned to the upper tier of Unit 4. See [D.E. 29-1] 62; [D.E. 31] ¶ 3. Correctional Officer Davis was nearby. Davis did not see who stabbed Fentress, but "saw that [Fentress] had blood running from his neck" shortly after the stabbing and immediately "close[d] the sliders to [the] upper + lower floor[s]" to isolate Fentress. [D.E. 29-1] 59. Fentress identified May as his assailant to defendant Moore-Haskins. Id. 47; [D.E. 31-1] 15. Fentress told Officer Swain that he believed May stabbed him because May had been disciplined for having a cell phone and believed that Fentress had informed authorities that May had a cell phone. [D.E. 29-1] 54. May was searched shortly after the stabbing, and did not have a weapon or any blood on his shirt (which was nevertheless stained). In fact, officers never recovered a weapon. Id. 13; [D.E. 31] ¶ 3.

The officer initially assigned to the investigation ("Oliver") charged May with an "A-04" disciplinary offense, assault on another inmate with a weapon to produce injury. [D.E. 29-1] 45. In the course of her investigation, Oliver took a statement from May and provided him with a notice of rights, both of which he signed. Id. 61–62; [D.E. 31-1] 3. May acknowledged being on the lower unit at the time of the stabbing and "notice[d] the gate being close[d] and inmates rushing toward the gate," but denied assaulting Fentress. [D.E. 29-1] 62; [D.E. 31-1] 3. Additionally, a correctional officer "observed inmate Obie Hare run off of unit four" at the time of the assault. [D.E. 29-1] 60. Hare refused to make a statement. Id. 49. On October 6, 2009, Oliver provided May with a summary of the evidence and a description of the charge against him, and May signed a statement indicating his receipt of the information. Id. 42.

On October 12, 2009, defendant Respass held a disciplinary hearing. Id. 38. Respass "read all witness statements and the investigating officer report" and considered May's testimony. Id. Respass observed that the case amounted to "one inmate['s] word against another inmate[']s word"

3

and ordered a reinvestigation in light of the ambiguity concerning inmate Hare's possible involvement and whether the stain observed on May's shirt was blood. Id.

On October 21 and 22, 2009, Sergeant Leigh reinvestigated the incident, interviewed Sergeant Riddick, confirmed that the stain on May's shirt was not blood, and concluded that "[t]he statement obtained in reference to inmate Obie Hare is not relevant to this case." Id. 37. On October 23, 2009, Leigh provided May with a summary of her findings and the recommended disciplinary charge. Id. 34. On October 26, 2009, Respass convened a second disciplinary hearing, "read all witness statements and the investigating officer report," considered May's testimony, and ordered further investigation into the relevance of the information about inmate Hare and whether "C/O Davis . . . witnessed the stabbing like inmate Fentress said and [whether] he witness[ed] inmate May on the lower floor during the time the assault took place . . . ." Id. 33.

Sergeant Leigh reinterviewed Davis, who confirmed that he did not see who stabbed Fentress. Sergeant Leigh also reinterviewed Swain, who confirmed that Fentress identified May as his attacker. Id. 27–30. Leigh again concluded that "the statement obtained in reference to inmate Obie Hare is not relevant to this case." Id. 27. On November 2, 2009, Leigh provided May with a summary of her findings and the recommended disciplinary charge. Id. 25. On November 9, 2009, Respass convened a third disciplinary hearing, "read all witness statements," and considered May's testimony. Id. 24. Moreover, Respass "checked inmate May['s] disciplinary screen and [concluded that] there is no documentation of this inmate being written up for a cell phone." Id. Respass observed that "[t]he credibility of inmate Fentress is suspect and not good." Id. Thus, Respass ordered "a complete re-investigation" into the truthfulness of Fentress's allegations about a cell phone and the involvement of inmate Hare. Id. 20.

In performing her third reinvestigation, Sergeant Leigh took statements from May (who again

4

denied any involvement), Sergeant Riddick (who again confirmed that May's shirt was not stained with blood), Sergeant Overton (who stated that Davis told Overton that Davis "did not know who done the stabbing"), Davis (who confirmed that he "did not see the actual assault or who did it"), and Moore-Haskins (who confirmed that Fentress identified May as his assailant). Id. 14–18. On November 15, 2009, Leigh provided May with a notice of rights, which he signed on the same date. Id. 12. On November 16, 2009, Leigh provided May with a summary of her findings and the disciplinary charge, which May signed that same day. Id. 8.

On November 23, 2009, Respass convened a fourth disciplinary hearing. Id. 4. Respass "explained the waiver and appeal rights along with the summary of charges to inmate May" and "read all witness statements and the investigating officer report." Id. Respass also heard testimony from May. See id. Respass found May guilty of the disciplinary offense "based on the fact that inmate Fentress was stabbed an[d] indicated that inmate May stabbed him and the fact that . . . Moore-Hoskins [sic] was informed by inmate May that he was on the lower floor at the time of the inciden[t] and he sleeps upstairs." Id. Respass sanctioned May with sixty days' segregation, fifty hours' extra duty, and six months' suspended telephone and canteen privileges. Id. 5–6. Respass provided May with a copy of his appeal rights, a record of the hearing, and the punishment imposed. Id. 4. May appealed, and on December 4, 2009, the Department of Corrections's chief DHO reviewed the appeal and upheld the decision. See id. 2.

II.

Summary judgment is appropriate when, after reviewing the record taken as a whole, no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue

5

of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

Certain procedural safeguards apply when loss of statutory good time credit is at issue. See, e.g., Wolff v. McDonnell, 418 U.S. 539, 556–57 (1974). Under Wolff, an inmate is entitled to the following: (1) written notice of the charges at least twenty-four hours in advance of the hearing; (2) a written statement by the factfinder as to the evidence relied on and the reasons for disciplinary action; and, (3) the opportunity to call witnesses and present documentary evidence in his defense, when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals. Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 454 (1985); Wolff, 418 U.S. at 563–66. Additionally, DHO findings revoking a prisoner's good-time credit must be supported by "some evidence in the record." Hill, 472 U.S. at 455. Federal courts, however, will not review the accuracy of the DHO's fact finding de novo or for clear error. See, e.g., Baker v. Lyles, 904 F.2d 925, 932 (4th Cir. 1990). Rather, "the relevant question is whether there is any evidence in the record that could support the conclusion reached by the [DHO]." Id. (quotation omitted).

The safeguards outlined in Wolff apply when loss of statutory good time credit is at issue. See, e.g., Wolff, 418 U.S. at 556–57, 563–66; see also Sandin v. Conner, 515 U.S. 472, 484 (1995) ("[L]iberty interests which are protected by the Due Process Clause ... will be generally limited to

freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."). Thus, "an inmate cannot challenge the loss of non-custodial privileges by way of a habeas petition because the loss of such privileges has only a speculative or incidental effect on the length of a prisoner's sentence and is not close to the core of habeas corpus." Lutz v. Hemingway, 476 F. Supp. 2d 715, 718 (E.D. Mich. 2007) (quotations omitted); see Hinojosa v. Thaler, 427 F. App'x 354, 355 (5th Cir. 2011) (per curiam) (unpublished); Grossman v. Bruce, 447 F.3d 801, 806 (10th Cir. 2006); Levi v. Holt, 193 F. App'x 172, 175 (3d Cir. 2006) (per curiam) (unpublished). Accordingly, because May did not lose any good conduct time, he has not suffered any violation of due process.

Alternatively, May's conviction was supported by "some evidence" in the record. See Hill, 472 U.S. at 455; Baker, 904 F.2d at 932. Specifically, when the stabbing occurred, May was in an area where he was not supposed to be, and the victim identified May as his assailant. Hence, defendants are entitled to summary judgment.

As for May's motion "for an/a temporary injunctive order compelling compliance with order or otherwise impose sanctions," May seeks an order "compelling [NCPLS] or . . . the attorney of record . . . to . . . conduct a full and complete . . . investigation . . . of the issues of fact raised in this case." [D.E. 18] 1. Essentially, May is dissatisfied with the results of the NCPLS's investigation. However, May's dissatisfaction does not entitle him to the requested relief. See Moore v. Gray, No. 5:04-CT-918-FL, 2005 WL 3448047, at *1 (E.D.N.C. Jan. 26, 2005) (unpublished), aff'd, 133 F. App'x 913 (4th Cir. 2005) (per curiam) (unpublished); Wrenn v. Freeman, 894 F. Supp. 244, 249 (E.D.N.C. 1995), aff'd, 92 F.3d 1184, 1996 WL 422969 (4th Cir. July 30, 1996) (per curiam) (unpublished table decision). Thus, the court denies May's motion.

7

III.

In sum, the court GRANTS defendants' motion for summary judgment [D.E. 28] and DENIES plaintiff's motion [D.E. 18]. The Clerk of Court shall close this case.

SO ORDERED. This 12 day of July 2012.

*James Dever*
JAMES C. DEVER III
Chief United States District Judge